# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDGAR BOECK** | ) |
| | ) |
| **Plaintiff,** | )      **Civil Action No.: 07-1096 (JR)** |
| | ) |
| **v.** | ) |
| | ) |
| **DEPT OF JUSTICE,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## DEFENDANTS' MOTION TO DISMISS

The United States Department of Justice, Bureau of Prisons ("BOP"), the Attorney General, BOP Director, Harley Lappin and BOP Department Hearing Officer Richard Mansha, in their official and individual capacities, by and through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12 (b)(1), (2) (3) and (6), for dismissal of this action for lack of subject matter jurisdiction, insufficiency of process, lack of venue and failure to state a claim upon which relief may be granted.

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities. A proposed Order consistent with the relief sought herein is also attached.

Dated: October 29, 2007                                   Respectfully submitted,

                                                          /s/

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

                                                          /s/

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

                                          /s/
_____

KENNETH ADEBONOJO
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4210
Washington, D.C. 20530
(202) 514-7157

COUNSEL FOR DEFENDANTS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EDGAR BOECK** )<br><br>    **Plaintiff,** )<br><br>    **v.** )<br><br>**DEPT OF JUSTICE,** *et al.*, )<br><br>    **Defendants.** ) | **Civil Action No.: 07-1096 (JR)** |

## ORDER

UPON CONSIDERATION of the Defendants' Motion To Dismiss Plaintiff's Complaint,

support thereof, the grounds stated therefore and the entire record in this matter, it is by the Court

this _____ day of _____, 2007, hereby

ORDERED that the said motion be and hereby is granted, and

FURTHER ORDERED that this case is dismissed with prejudice.

This is a final and appealable order.

_____
HON. JAMES ROBERTSON, U.S.D.J.

Copies to:

Kenneth Adebonojo
Assistant United States Attorney
555 4th Street, N.W
Washington, D.C. 20530

Edgar Boeck
21965 Highway 46
West Bulverde, Tx
78070

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDGAR BOECK                          )
                                     )
            Plaintiff,               )        Civil Action No.: 07-1096 (JR)
                                     )
      v.                             )
                                     )
DEPT OF JUSTICE, *et al.*,           )
                                     )
            Defendants.              )
                                     )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants hereby submit this memorandum of law in support of its Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3) , (b)(6) and for Failure to Exhaust Administrative Remedies.

## I.  INTRODUCTION

On June 19, 2007, Edgar Boeck ("Plaintiff") commenced this suit alleging constitutional claims against the Department of Justice, Federal Bureau of Prisons (BOP) and several individually-named Defendants, including the Attorney General; BOP Director, Harley Lappin; Richard Mancha, Department Hearing Officer ("DHO"); and Leandro Davila, Jr.[1]  Plaintiff seeks to bring this suit as a class action under Rule 23(b) of the Federal Rules of Civil Procedure.[2]  Compl., ¶¶ 4-12.  Plaintiff claims that the BOP's drug testing policy violates the First, Fourth, Fifth, and Eighth Amendments to the Constitution and the Administrative Procedure Act ("APA") because the policy allegedly

---

[1] Leandro Davila is a halfway house contractor employee, not a BOP employee.

[2] The Court should deny plaintiff's request for class certification because class representatives cannot appear *pro se. Fymbo v. State Farm*, 213 F.3d 1320, 1321 (10th Cir. 2000); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975).

allows for the taking of good conduct time, i.e. one-year Residential Drug Abuse Program (RDAP) sentence reduction and time served in a halfway house, without a procedure to detect "false positive readings" in the BOP's drug testing policies. Compl., ¶¶ 28-31. Plaintiff seeks injunctive relief prohibiting the enforcement of BOP's current drug testing policy and instead implementing a testing procedure that includes additional testing for "false positive" readings. Compl. at 7. Plaintiff also seeks $400,000 in damages for emotional and psychological distress, loss of good time, loss of one-year sentence reduction, and loss of time served in a halfway house. Compl. at 7. Although he brings these claims against the individually-named Defendants in their official and individual capacities, Plaintiff does not state with specificity from which Defendant he seeks monetary relief.

By way of background, on August 24, 2000, the United States District Court for the Western District of Texas sentenced Plaintiff to 24 months in federal prison and three years of supervised release for conspiracy to manufacture and distribute methamphetamine. Plaintiff was released from custody on July 11, 2002. However, on October 15, 2003, he was committed to federal prison again for a five-year term based on a supervised release violation. Plaintiff was released from federal custody on August 10, 2007. SENTRY Public Information Inmate Data, attached hereto as *Ex.* A.

On February 20, 2006, while serving his sentence at a community corrections center in San Antonio, Texas, Plaintiff submitted a urine sample for drug testing. Compl. ¶ 13. Plaintiff's urine tested positive for opiates and in April 2006, he was found guilty by the DHO of violating Code 112, Use of Narcotics, Marijuana, Drugs, or Related Paraphernalia not Prescribed for the Individual by Medical Staff. Compl. ¶ 16; SENTRY Inmate Discipline Data, Report 1455108. The sanction imposed included the loss of 41 days of good time and a disciplinary transfer back to prison. Compl. ¶ 16; SENTRY Inmate Discipline Data, Report 1455108.

2

## II.  STANDARD OF REVIEW

In resolving a motion to dismiss, pursuant to Rule 12(b)(6), the court must construe the factual allegations in the complaint in the light most favorable to plaintiff, but need not accept the legal conclusions or allegations without factual support in the allegations made. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  The Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matter of which the court may take judicial notice, and matters of public record. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  Here, Plaintiff has pled no facts in support of his constitutional claims that would entitle him to relief.

## III.  ARGUMENT

### A.  *Bivens* Liability Does Not Extend to the Department of Justice and BOP

Plaintiff claims that the BOP's drug testing policy violates his rights under the First, Fourth, Fifth, and Eighth Amendments to the Constitution.  However, constitutional or *Bivens* claims, against the DOJ and BOP must be dismissed because Plaintiff may not bring a *Bivens* action against the United States or one of its agencies.  In *Bivens*, the Supreme Court inferred a cause of action for money damages against federal agents directly from the Fourth Amendment, which the agents had allegedly violated under color of federal law. *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971).  The Supreme Court, in *FDIC v. Meyer*, unanimously refused to extend *Bivens* to imply a cause of action directly against the United States or a federal agency. *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994).  The Court explained that the logic of *Bivens* did not support an action directly against the Federal Savings and Loan Insurance Corporation (FSLIC) because the *Bivens* decision was based partly on the

3

fact that a direct action against the Government was not available. *FDIC v. Meyer*, 510 U.S. at 485. In further support of its holding, the Court reasoned that implying a direct damages cause of action against federal agencies would undermine *Bivens'* purpose of deterring officers from committing future constitutional violations because plaintiffs would try to circumvent qualified immunity by suing federal agencies instead of the individual officers. *Id.* Finally, the Court expressed its hesitance to extend *Bivens* liability to a federal agency considering the potentially enormous financial burden such a holding could impose on the federal government. *Id.* at 486.

Moreover, in deciding not to allow *Bivens* actions against private entities acting under color of federal law, the Supreme Court reaffirmed the above reasoning in *Meyer* and noted that inmates may not bring *Bivens* claims against the United States or the Bureau of Prisons. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *Drake v. F.A.A.*, 291 F.3d 59, 72 (D.C. Cir. 2002) (stating that it is "well-settled" that *Bivens* liability cannot be imposed on an agency of the federal government); *Adeogba v. Migliaccio*, 266 F. Supp.2d 142, 145 n.2 (D.D.C. 2003) (concluding that a *Bivens* suit against the INS should be dismissed for lack of subject matter jurisdiction because sovereign immunity prevents *Bivens* actions against the United States and its agencies); *Mac'Avoy v. Smithsonian Inst.*, 757 F. Supp. 60, 69 (D.D.C. 1991) (noting that the *Bivens* doctrine does not apply to lawsuits brought against the federal government and are routinely dismissed for lack of subject matter jurisdiction). Therefore, without conceding the fact that he has pled a proper *Bivens* claim, Plaintiff's constitutional claims against the DOJ and BOP should be dismissed under Rule 12(b)(1) for lack of jurisdiction.

4

**B.   The Administrative Procedure Act Precludes Judicial Review of BOP's Drug Testing Policy**

Generally, the APA provides for judicial review of agency action and the BOP is an "agency" within the definition of the APA. 5 U.S.C. § 702; *Ramer v. Saxbe*, 522 F.2d 695, 697 (D.C. Cir. 1975). However, judicial review under the APA is barred if (1) prohibited by statute or (2) the agency action at issue is committed to agency discretion by law. 5 U.S.C. § 701(a); *Webster v. Doe*, 486 U.S. 592, 599 (1988). The second exception requires dismissal where a statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. *Webster*, 486 U.S. at 600; *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

Congress has provided that the BOP shall:

> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
>
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States . . .
>
> 18 U.S.C. § 4042.

This enabling statute is broadly written and directs the BOP to perform various functions without specific guidelines for BOP officials in administering these duties. The total absence of specific guidelines indicates that the BOP has "broad unreviewable discretion" in fulfilling its responsibilities. *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520 (1979).

5

In the present case, plaintiff challenges BOP's drug testing policy under the APA. However, 18 U.S.C. § 4042 grants the BOP broad discretion to provide for the safekeeping, protection, and discipline of inmates, which includes the drug testing of inmates. Therefore, BOP's drug testing policy is not subject to judicial review under the APA and the Court should dismiss plaintiff's APA claim.[3]

## C.   The Supreme Court's Holding in *Heck v. Humphrey* Bars Plaintiff's Claim

In *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994), the Supreme Court held that an inmate may not bring a civil rights action for money damages alleging unconstitutional conviction or imprisonment, unless the plaintiff has first had the conviction or imprisonment reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck,* 512 U.S. at 486-87. Subsequently, in *Edwards v. Balisok,* the Supreme Court applied *Heck* to an inmate's civil rights suit attacking an internal prison disciplinary sanction that affected the inmate's overall length of confinement by depriving him of good-time credits. *Balisok,* 520 U.S. 641, 646-48 (1997). The Court concluded that success on the inmate's claim for damages and declaratory relief, based on procedural defects in the prison disciplinary hearing, necessarily implied the invalidity of the punishment imposed and was therefore not cognizable under § 1983. *Balisok,* 520 U.S. at 646. The D.C. Circuit has specifically extended the *Heck* rule to *Bivens* actions brought against federal officials. *Williams*

---

[3] In any event, Plaintiff is not entitled to his requested relief under the APA. The APA only waives the government's immunity for actions seeking relief other than money damages. *Trudeau v. Federal Trade Comm.,* 456 F.3d 178, 343-44 (D.C. Cir. 2006). Therefore, plaintiff cannot bring an APA claim for money damages. Additionally, as explained *infra,* Plaintiff's claim for equitable relief under the APA is moot because plaintiff is no longer in BOP custody.

*v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996).  Consequently, instead of filing a § 1983 or *Bivens*

suit, inmates must use habeas corpus remedies when bringing claims that could affect the

duration of their confinement. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Razzoli v.*

*Federal Bureau of Prisons*, 230 F.3d 371, 373-74 (D.C. Cir. 2000) (upholding district court's

dismissal of federal inmate's claim regarding the revocation of good time as a disciplinary

sanction under Rule 12(b)(6) because it challenged the duration of custody, for which habeas

corpus is the exclusive remedy).  This includes claims regarding urine analysis testing that could

affect the duration of confinement. *Farver v. Schwartz*, 255 F.3d 473, 474 (8th Cir. 2001)

(concluding inmate could not seek restoration of his good-time credits or pursue other relief to

remedy the effect of the urine-test disciplinary until it is set aside); *Lingle v. BOP*, 2006 WL

2934122, *1-2 (N.D. Tex. Oct. 13, 2006) (finding that the *Heck* "favorable termination"

requirement applied to plaintiff's *Bivens* action challenging a Discipline Committee decision that

he was guilty of using narcotics on the basis of an allegedly "false positive reading" on a urine

analysis).

     In the present case, Plaintiff challenges the BOP's drug testing policy and specifically the

DHO's finding that he committed a Code 112 violation despite the alleged "false positive"

reading. Compl. ¶¶ 13-16, 27-31.  After a hearing on April 12, 2006, Plaintiff was sanctioned for

violating Prohibited Act Code 112 of the Inmate Discipline Policy, which prohibits inmates from

Use of Narcotics not Prescribed for the Individual by Medical Staff.  The sanction for this

violation included the disallowance of 41 days of good conduct time.  SENTRY Inmate

Discipline Data, Report No. 1455108.  Because the sanction that Plaintiff received included a

disallowance of statutory good time, he must first file a habeas petition to challenge and overturn

the disciplinary proceeding before bringing a *Bivens* claim.  Therefore, this suit alleging constitutional claims collaterally attacks the validity of the disciplinary action and seeks non-specific money damages arising therefrom.  Accordingly, it must be dismissed for failure to state a claim.

### D.    Plaintiff Has Failed to Exhaust His Administrative Remedies under the PLRA

Plaintiff has failed to exhaust his administrative remedies with regard to the claims raised in this lawsuit.  The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust "such administrative remedies as are available" before bringing a civil action in federal court regarding prison conditions.  42 U.S.C. § 1997e(a).  In *Booth v. Churner,* a unanimous Supreme Court held that the PLRA requires inmates to complete all stages of any prison administrative remedy process capable of addressing the inmate's complaint and providing some form of relief.  *Booth,* 532 U.S. 731 at 741 (2001).  Exhaustion is now required for all actions brought under any federal law with respect to prison conditions.  *Porter v. Nussle,* 534 U.S. 516, 524, 534 (2002) (holding that the PLRA exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes).  "Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 524-25.  Therefore, if an inmate has not exhausted his administrative remedies before filing suit, the court must dismiss the inmate's complaint.  *Booth,* 532 U.S. at 741; *Jackson v. District of Columbia,* 245 F.3d 262, 269 (D.C. Cir. 2001).  The exhaustion requirement is not excused by an inmate's release from custody after filing suit.  *Cox v. Mayer,* 332 F.3d 422, 425-28 (6th Cir. 2003); *Ahmed v. Dragovich,* 297 F.3d

8

201, 210 (3rd Cir. 2002); *Dixon v. Page*, 291 F.3d 485, 488-89 (7th Cir. 2002); *Robinson v. District of Columbia*, 2007 WL 1948614, *3 (D.D.C. July 2, 2007); *Jackson v. Corrections Corp. of America*, 2007 WL 1848014, *3 (D.D.C. June 27, 2007).

The BOP has implemented a three-tiered administrative remedy procedure under 28 C.F.R. § 542.10-542.18 to review any complaint regarding an inmate's confinement. The procedure requires an inmate first to file a complaint with the institution staff. If dissatisfied with the response at that level, the inmate may appeal to the Regional Director. If the Regional Director denies the inmate's appeal, the inmate may then bring a final appeal to the General Counsel in the Central Office of the Bureau of Prisons. Complaints regarding disciplinary hearings, unlike other administrative remedy requests, are initially submitted to the region rather than institution level. An administrative remedy is not considered exhausted until the Central Office has issued a formal response to the inmate.

In the present case, Plaintiff failed to exhaust his administrative remedies. He has not filed an appeal through each level of review of any administrative remedy regarding BOP's drug testing policy. Declaration of Bruce Plumley ¶ 5, attached hereto as *Ex.* B. Plaintiff filed an administrative remedy at the regional level regarding the Center Discipline Committee decision that was based on the results of Plaintiff's February 2006 drug test. Plumley Decl. ¶ 5. However, Plaintiff failed to properly appeal this remedy to the Central Office. Plumley Decl. ¶ 5. Therefore, Plaintiff has not complied with the PLRA mandatory exhaustion requirements regarding the claims brought in this lawsuit and the Court should dismiss his complaint.

9

### E.    This Court Has No Personal Jurisdiction

Plaintiff has not shown that any of the individual Defendants named in this lawsuit are residents of the District of Columbia, engage in minimum contacts with the District of Columbia or that he suffered any injuries in the District of Columbia.  Therefore, there is no *in personam* jurisdiction.

### 1.  Plaintiff's burden

It is the Plaintiff who bears the burden of pleading the facts necessary to substantiate *in personam* jurisdiction in this Court.  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999).  As explained by this Court in *Edmond v. U.S. Postal Service*, 727 F. Supp. 7, 10 (D. D.C. 1989), *aff'd in part and rev'd in part on other grounds*, 949 F.2d 415 (D. C. Cir. 1991):

> A plaintiff in district court must plead essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court.  "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.  And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence."  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

Plaintiff has failed and cannot meet his burden to establish such necessary facts.  All Defendants are moving for their dismissal from this lawsuit based upon lack of *in personam* jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) because Plaintiff has not pled facts that establish that Defendants are residents or that Defendants established minimum contacts with the District or that Plaintiff suffered any injuries in the District.

10

## 2. D.C. Code §13-423, the "Long Arm" statute

*In personam* jurisdiction may be maintained by the United States District Court for the District of Columbia only if permitted by the "long arm" laws of the District of Columbia. *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). The District of Columbia exercises personal jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 (2000), which states in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's -
>
>> (1) transacting any business in the District of Columbia;
>> (2) contracting to supply services in the District of Columbia;
>> (3) causing tortuous injury in the District of Columbia by an act or omission in the District of Columbia;
>> (4) causing tortuous injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>> (5) having an interest in, using, or possessing real property in the District of Columbia;
>> (6) contracting to insure or act as surety . . . ; or
>> (7) marital or parent and child relationship. . . .
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

In the instant case, Plaintiff's pleading does not establish proper *in personam* jurisdiction in this District under § 13-423. *Crane* at 762. First, Defendant Mansha resides and works in Texas,[4] Compl. p. 3-4, and Plaintiff has failed to allege facts to establish a basis for long arm

---

[4] Although the Attorney General and Director Lappin can be found in this District, Plaintiff makes no specific allegations against either and individual liability cannot be premised on a theory of respondeat superior. *Marshall v. Reno*, 915 F.Supp. 426, 430 (D.D.C. 1996).

11

jurisdiction. Moreover, the Plaintiff does not allege that any of these above referenced

Defendants transacted any business or contracted to supply services in the District of Columbia,

nor have they caused any tortious injury in the District of Columbia. Moreover, *in personam*

jurisdiction cannot be predicated on the provisions of the sections (a)(3) and (4) of the "long

arm" statute because the Plaintiff does not and cannot claim that the federal employees at the

federal prison where he was housed outside the District caused him tortious injury within the

District of Columbia. The injuries about which plaintiff complains occurred in Texas and he

alleges no facts to establish that he suffered any injury in the District of Columbia. *Farmer v.*

*Moritsugu*, 163 F.3d 610 (D.C. Cir. 1998) (local medical staff treating in BOP institutions

outside D.C. not subject to personal jurisdiction); *Meyer v. Federal Bureau of Prisons*, 940 F.

Supp. 9 (D. D.C. 1996) (No personal jurisdiction over Bureau of Prisons case manager working

in Rochester, Minnesota, sued in D.C. in individual capacity by inmate based upon claimed

inaccuracy of prison records). There is no *act* or *injury* alleged to have been accomplished

within the District of Columbia by any of these defendants. Any injury to Plaintiff necessarily

took place outside the District of Columbia, since he was never housed here and all allegations in

this action pertain to his incarceration in Virginia. Therefore, this Court lacks personal

jurisdiction over the above named defendants for activities taking place outside the District of

Columbia.

### 3. *In personam* jurisdiction requires "minimum contacts"

In order for this District to have personal jurisdiction over a nonresident defendant,

jurisdiction must be proper under both the District of Columbia long-arm statute and consistent

with the demands of due process. *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995);

*Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). "Since the District of Columbia's long-arm statute has been held to extend as far as the Due Process Clause allows, *Mouzavires v. Baxter*, 434 A.2d 988 (D.C. 1981) (*en banc*), *cert. denied*, 455 U.S. 1006 (1982), personal jurisdiction exists when the defendant has purposely established minimum contacts with the forum state and when the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.' *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102 (1987)." *Wiggins v. Equifax Inc.*, 853 F. Supp. 500 (D. D.C. 1994). "Plaintiff's claim for relief must arise from the defendants' contacts with the District of Columbia and his 'claims must bear some relation to the acts in the District that are relied upon to confer personal jurisdiction.' [D.C. Code] § 13-423(b). *Bayles v. K-Mart Corp.*, 636 F. Supp. 852, 854 (D.D.C. 1986)." *Id.* at 502.

The burden is again on Plaintiff to establish that this Court can exercise personal jurisdiction over Defendants consistent with the Due Process Clause. *Blumenthal v. Drudge*, 992 F. Supp. 44, 53 (D. D.C. 1998). Plaintiff in this case has wholly failed to allege such facts, and the allegations against all these defendants do not establish "minimum contacts" necessary to confer personal jurisdiction upon the District Court for the District of Columbia.[5] The mere fact that Defendants are employees of the BOP and the Central Office of that agency happens to be in Washington, D.C., is insufficient to establish the requisite "minimum contacts" with the District of Columbia. *Cameron v. Thornburgh*, 983 F.2d 235, 256 (D.C. Cir. 1993); *see James v. Reno, et al.*, No. 99-5081, 1999 WL 615084 (D.C. Cir. Jul. 2, 1999) (Inmate's security classification and transfer request made in Texas; both federal prisons at issue located in Texas; no injury suffered in the District of Columbia; mere fact that White and Snider are employees of the

---

[5] *See supra* n. 4 (Director Lappin).

13

Bureau of Prisons based in D.C. insufficient to establish requisite "minimum contacts" with District); *Meyer v. Reno*, 911 F. Supp. 11, 14 (D.D.C. 1996) (Bureau of Prisons employee who works at FCI Memphis, Tennessee and three Florida State attorneys not alleged to conduct any business or make any contracts for services and no injury alleged to have been suffered in the District of Columbia, so court cannot exercise jurisdiction over them).

The presence in the District of Columbia of the defendants must be "continuous and systematic" and relative to the claim to meet the "minimum contacts" requirement. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). In this case these nonresident defendants lack the requisite minimum contacts with the District of Columbia because the operative facts of any claim herein arose in Texas. Therefore, defendants' motions to dismiss under Rule 12(b)(2) should be granted, and they should be dismissed from this suit.

F.      **Venue is Improper in the United States District Court for the District of Columbia**

Plaintiff's constitutional claims must also be dismissed pursuant to Rule 12(b)(3) for improper venue. Venue is governed by 28 U.S.C. § 1391(b). *Stafford v. Briggs*, 444 U.S. 527, 544 (1980); *Cameron v. Thornburgh*, 983 F.2d 235, 257 (D.C. Cir. 1993); *Pollack v. Meese*, 737 F. Supp. 663, 665 (D.D.C. 1990). Under section 1391(b), a cause of action alleging constitutional claims may be brought only in a judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

14

In the instant case, venue is not proper in this District of Columbia under 28 U.S.C. §

1391(b) because none of the Defendants reside in the District of Columbia and a substantial part

of the alleged events or omissions giving rise to Plaintiff's claims did not take place in the

District of Columbia but rather in Texas. Because venue is improper, the Court should dismiss

plaintiff's constitutional claims under Fed. R. Civ. P. 12(b)(3).[6]

### G.    Plaintiff's Request for Injunctive Relief is Moot

Article III of the Constitution restricts federal court jurisdiction to "actual, ongoing

controversies." *Columbian Rope Co. v. West,* 142 F.3d 1313, 1316 (D.C. Cir. 1998) (quoting

*Honig v. Doe,* 484 U.S. 305, 317 (1988)).  A case or claim no longer involves an actual

controversy, or is considered moot, where events have so transpired that the decision will not

presently affect the parties' rights or have a more-than-speculative chance of affecting them in

the future. *Id.* Inmates' claims for declaratory and injunctive relief regarding prison conditions

are moot when they are released from prison. *Sutton v. Rasheed,* 323 F.3d 236, 248 (3d Cir.

2003); *Anyanwutaku v. Moore,* 151 F.3d 1053, 1057 (D.C. Cir. 1998); *Green v. Branson,* 108

F.3d 1296, 1300 (10th Cir. 1997).

In the present case, Plaintiff's request for injunctive relief regarding BOP's drug testing

policy became moot when he was released from BOP custody on August 10, 2007.  Because

Plaintiff is no longer incarcerated and therefore no longer subject to BOP drug testing

---

[6] Under 28 U.S.C. § 1406(a), if the venue is improper, the Court may transfer the case to
a district where it could have been properly brought in the interest of justice. However, this case
would be subject to dismissal no matter where the transfer because plaintiff's claims are barred
by the Supreme Court's holding in *Heck v. Humphrey.*  In addition, Plaintiff failed to exhaust his
administrative remedies and he has failed to state a valid claim under the Constitution or the
APA.  Therefore, outright dismissal better serves the interests of justice.

15

procedures, issuing the injunctive relief requested by Plaintiff would not affect the parties' rights. Consequently, the court should dismiss plaintiff's request for injunctive relief as moot.

### H.   Plaintiff Has Failed to State a Constitutional Claim

Plaintiff challenges BOP's drug testing policy under the Due Process Clause of the Fifth Amendment.  The Due Process Clause requires that "some evidence" support a prison disciplinary decision.  *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985).  A single urinalysis for drugs amounts to "some evidence" and satisfies due process.  *Henson v. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993).  Prison officials need not grant an inmate's request for a second or independent drug test to satisfy due process.  *Henson*, 213 F.3d at 898-99; *Allen*, 5 F.3d at 1153; *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992).  Additional testing would impose a significant administrative burden on prison officials and not all inmates could afford independent tests.  *Koenig*, 971 F.2d at 423.  Moreover, allowing inmates to routinely challenge the reliability of drug tests "would seriously interfere with the institutional goal of drug deterrence and prompt resolution of drug related infractions." *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986).

In this case, Plaintiff claims that BOP's drug testing policy violates his rights under the Fifth Amendment Due Process Clause because it does not provide for additional testing to address the possibility of a "false positive reading."  However, these allegations fail to state a Fifth Amendment claim because a single urinalysis, which Plaintiff admits he received, is enough to satisfy the Due Process Clause.  The Constitution does not require the BOP to provide an additional test.

16

Plaintiff also asserts that the BOP's drug testing policy violates his rights under the First, Fourth, and Eighth Amendments to the Constitution. However, he fails to present any viable constitutional claim or even articulate how the drug testing policy implicates these amendments. Random drug testing of inmates is a reasonable means of combating the unauthorized use of narcotics and does not violate the Fourth Amendment. *See e.g.*, *Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994) (concluding that random urine testing of inmates does not violate the Fourth Amendment); *Spence*, 807 F.2d at 755 (holding random drug testing in prison does not violate inmates' Fourth Amendment rights). Additionally, plaintiff has made no showing that the urinalysis policy nor its application to him was somehow tantamount to cruel and unusual punishment proscribed by the Eighth Amendment. Finally, imprisonment sharply limits inmates right of association under the First Amendment, *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003), and plaintiff has not alleged how BOP's drug testing policy violated this right. Consequently, all of plaintiff's constitutional claims should be dismissed under Rule 12(b)(6) for failure to state a claim.

## I.    Defendants Are Entitled to Qualified Immunity

The constitutional claims against the individual-named Defendants should also be dismissed because they are entitled to qualified immunity. Qualified immunity shields federal defendants from suit for money damages if the plaintiff fails to allege facts that give rise to the violation of a clearly-established constitutional or statutory right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine if a defendant is entitled to qualified immunity, the initial inquiry is whether the facts alleged show the individual's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201

17

(2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

As set forth above, Plaintiff has failed to allege any constitutional claim against any of the BOP defendants. Because no constitutional right would have been violated were Plaintiff's allegations established, the individual BOP defendants are entitled to qualified immunity in this case. But regardless, even if a constitutional violation occurred, Plaintiff has failed to show how any of the Individual Defendants violated clearly established law. To the contrary, as set forth above, the courts have routinely upheld BOP random drug testing policies and practices.

### J. Plaintiff Cannot Recover for His Alleged Mental or Emotional Injury

Under the Prison Litigation Reform Act, an inmate may not recover compensatory or punitive damages for mental or emotional injury suffered while in custody without a prior showing of physical injury. *See* 42 U.S.C. § 1997e(e); *Davis v. District of Columbia*, 158 F.3d 1342, 1345-46, 1348 (D.C. Cir. 1998); *Caldwell v. District of Columbia*, 201 F. Supp.2d 27, 32 (D.D.C. 2001). In the present case, plaintiff is seeking damages for emotional and psychological distress. Compl. at 7. However, he has not alleged any physical injury and, therefore, he cannot recover damages for his alleged emotional and psychological distress.

### IV.  CONCLUSION

For the reasons outlined above, the Court should dismiss plaintiff's complaint for lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, failure to state a claim, and failure to exhaust administrative remedies.

Dated: October 29, 2007                Respectfully submitted,

                                          /s/
                JEFFREY A. TAYLOR, D.C. BAR # 498610
                United States Attorney

                                          /s/
                RUDOLPH CONTRERAS, D.C. BAR # 434122
                Assistant United States Attorney

                                          /s/
                KENNETH ADEBONOJO
                Assistant United States Attorney
                United States Attorney's Office
                Civil Division
                555 4th Street, N.W. – Room E4210
                Washington, D.C. 20530
                (202) 514-7157

                COUNSEL FOR DEFENDANTS

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2007, I caused the foregoing Motion to

Dismiss to be served on *pro se* Plaintiff, postage prepaid, addressed as follows:


Edgar Boeck
21965 Highway 46
West Bulverde, Tx
78070



_____ /s/ _____
KENNETH ADEBONOJO
Assistant United States Attorney
555 4th Street, N.W., Room E4210
Washington, D.C. 20530
(202) 514-7157
(202) 514-8780 (facsimile)

```
BOPOI          *        PUBLIC INFORMATION        *      08-24-2007
PAGE 001       *            INMATE DATA           *      10:47:02
                          AS OF 08-24-2007


REGNO..: 94970-080 NAME: BOECK, EDGAR ALBERT


                 RESP OF: CSA / GOOD CONDUCT TIME RELEASE
                   PHONE..: 210-472-6225    FAX: 210-472-6224
                                    RACE/SEX...: WHITE / MALE
FBI NUMBER.: 691188MB4              DOB/AGE....: 02-13-1949 / 58
ACTUAL RELEASE METH.: GCT REL
ACTUAL RELEASE DATE.: 08-10-2007
------------------------ ADMIT/RELEASE HISTORY ----------------------------
FCL   ASSIGNMENT DESCRIPTION            START DATE/TIME STOP  DATE/TIME
CSA   GCT REL    GOOD CONDUCT TIME REL (CCCA)  08-10-2007 1004 CURRENT
CSA   A-DES      DESIGNATED, AT ASSIGNED FACIL 06-13-2007 1333 08-10-2007 1004
6-Z   RELEASE    RELEASED FROM IN-TRANSIT FACL 06-13-2007 1433 06-13-2007 1433
6-Z   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-13-2007 0922 06-13-2007 1433
BML   FURL TRANS FURL W/UNESCORTED TRF TO A CCC 06-13-2007 0822 06-13-2007 0822
BML   A-DES      DESIGNATED, AT ASSIGNED FACIL 06-26-2006 1427 06-13-2007 0822
2-E   RELEASE    RELEASED FROM IN-TRANSIT FACL 06-26-2006 1527 06-26-2006 1527
2-E   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 06-26-2006 0630 06-26-2006 1527
CSA   TRANSFER   TRANSFER                      06-26-2006 0530 06-26-2006 0530
CSA   A-DES      DESIGNATED, AT ASSIGNED FACIL 03-08-2006 1034 06-26-2006 0530
2-E   RELEASE    RELEASED FROM IN-TRANSIT FACL 03-08-2006 1134 03-08-2006 1134
2-E   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 03-08-2006 1000 03-08-2006 1134
CSA   TRANSFER   TRANSFER                      03-08-2006 0900 03-08-2006 0900
CSA   A-DES      DESIGNATED, AT ASSIGNED FACIL 02-28-2006 1555 03-08-2006 0900
2-E   RELEASE    RELEASED FROM IN-TRANSIT FACL 02-28-2006 1655 02-28-2006 1655
2-E   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 02-28-2006 1653 02-28-2006 1655
CSA   TRANSFER   TRANSFER                      02-28-2006 1553 02-28-2006 1553
CSA   A-DES      DESIGNATED, AT ASSIGNED FACIL 01-12-2006 1450 02-28-2006 1553
6-Z   RELEASE    RELEASED FROM IN-TRANSIT FACL 01-12-2006 1550 01-12-2006 1550
6-Z   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 01-12-2006 0932 01-12-2006 1550
BML   FURL TRANS FURL W/UNESCORTED TRF TO A CCC 01-12-2006 0832 01-12-2006 0832
BML   A-DES      DESIGNATED, AT ASSIGNED FACIL 10-15-2003 1647 01-12-2006 0832
B18   RELEASE    RELEASED FROM IN-TRANSIT FACL 10-15-2003 1747 10-15-2003 1747
B18   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 10-15-2003 0630 10-15-2003 1747
OKL   HLD REMOVE HOLDOVER REMOVED              10-15-2003 0530 10-15-2003 0530
OKL   A-HLD      HOLDOVER, TEMPORARILY HOUSED  09-23-2003 1640 10-15-2003 0530
2-E   RELEASE    RELEASED FROM IN-TRANSIT FACL 09-23-2003 1740 09-23-2003 1740
2-E   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 07-28-2003 1032 09-23-2003 1740
CSA   ADMIN REL  ADMINISTRATIVE RELEASE        07-28-2003 0932 07-28-2003 0932
CSA   A-ADMIN    ADMINISTRATIVE ADMISSION      07-28-2003 0928 07-28-2003 0932
CSA   GCT REL    GOOD CONDUCT TIME RELEASE     07-11-2002 0933 07-28-2003 0928
CSA   A-DES      DESIGNATED, AT ASSIGNED FACIL 05-28-2002 1230 07-11-2002 0933
5-D   RELEASE    RELEASED FROM IN-TRANSIT FACL 05-28-2002 1330 05-28-2002 1330
5-D   A-ADMIT    ADMITTED TO AN IN-TRANSIT FACL 05-28-2002 1025 05-28-2002 1330
TRV   FURL TRANS FURL W/UNESCORTED TRF TO A CCC 05-28-2002 0925 05-28-2002 0925
TRV   A-DES      DESIGNATED, AT ASSIGNED FACIL 11-27-2001 1015 05-28-2002 0925



G0002      MORE PAGES TO FOLLOW . . .
```

```
    BOPOI          *       PUBLIC INFORMATION        *      08-24-2007
    PAGE 002        *           INMATE DATA          *      10:47:02
                            AS OF 08-24-2007

    REGNO..: 94970-080 NAME: BOECK, EDGAR ALBERT


                        RESP OF: CSA / GOOD CONDUCT TIME RELEASE
                        PHONE..: 210-472-6225    FAX: 210-472-6224
    2-E    RELEASE     RELEASED FROM IN-TRANSIT FACL 11-27-2001 1115 11-27-2001 1115
    2-E    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 11-21-2001 1538 11-27-2001 1115
    CSA    TRANSFER    TRANSFER                       11-21-2001 1438 11-21-2001 1438
    CSA    A-DES       DESIGNATED, AT ASSIGNED FACIL  10-03-2001 1435 11-21-2001 1438
    2-E    RELEASE     RELEASED FROM IN-TRANSIT FACL  10-03-2001 1535 10-03-2001 1535
    2-E    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 09-28-2001 0940 10-03-2001 1535
    CSA    TRANSFER    TRANSFER                       09-28-2001 0840 09-28-2001 0840
    CSA    A-DES       DESIGNATED, AT ASSIGNED FACIL  08-03-2001 0400 09-28-2001 0840
    3-G    RELEASE     RELEASED FROM IN-TRANSIT FACL  08-03-2001 0500 08-03-2001 0500
    3-G    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 08-01-2001 1310 08-03-2001 0500
    LOF    FURL TRANS  FURL W/UNESCORTED TRF TO A CCC 08-01-2001 1010 08-01-2001 1010
    LOF    A-DES       DESIGNATED, AT ASSIGNED FACIL  10-26-2000 1441 08-01-2001 1010
    A02    RELEASE     RELEASED FROM IN-TRANSIT FACL  10-26-2000 1741 10-26-2000 1741
    A02    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 10-26-2000 0845 10-26-2000 1741
    OKL    HLD REMOVE  HOLDOVER REMOVED               10-26-2000 0745 10-26-2000 0745
    OKL    A-HLD       HOLDOVER, TEMPORARILY HOUSED   10-24-2000 1505 10-26-2000 0745
    2-E    RELEASE     RELEASED FROM IN-TRANSIT FACL  10-24-2000 1605 10-24-2000 1605
    2-E    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 09-20-2000 1513 10-24-2000 1605
    CSA    ADMIN REL   ADMINISTRATIVE RELEASE         09-20-2000 1413 09-20-2000 1413
    CSA    A-ADMIN     ADMINISTRATIVE ADMISSION       09-20-2000 1412 09-20-2000 1413








    G0002      MORE PAGES TO FOLLOW . . .
```

```
BOPOI            *        PUBLIC INFORMATION        *    08-24-2007
PAGE 003         *            INMATE DATA           *    10:47:02
                            AS OF 08-10-2007


REGNO..: 94970-080 NAME: BOECK, EDGAR ALBERT


                   RESP OF: CSA / GOOD CONDUCT TIME RELEASE
                      PHONE..: 210-472-6225    FAX: 210-472-6224
PRE-RELEASE PREPARATION DATE: 03-03-2007


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  08-10-2007 VIA GCT REL


-----------------------PRIOR JUDGMENT/WARRANT NO: 020 ----------------------


COURT OF JURISDICTION..........: TEXAS, WESTERN DISTRICT
DOCKET NUMBER..................: SA-99-CR-362(06)-HG
JUDGE..........................: PRADO
DATE SENTENCED/PROBATION IMPOSED: 08-24-2000
DATE SUPERVISION REVOKED........: 07-03-2003
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED.................: 10-15-2003
HOW COMMITTED..................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED..............: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00        $00.00         $00.00       $00.00


RESTITUTION...: PROPERTY: NO  SERVICES:  NO      AMOUNT: $00.00


-----------------------PRIOR OBLIGATION NO: 010 ----------------------------
OFFENSE CODE....: 391
OFF/CHG: 21 USC 846, 21 USC 841(A)(1): CONSPIRACY TO MANUFACTURE AND
         DISTRIBUTE METHAMPHETAMINE. (VIOLATOR)


 SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
 SENTENCE IMPOSED/TIME TO SERVE.:  18 MONTHS
 RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: C/C TO 030
 DATE OF OFFENSE................: 02-01-1997


-----------------------PRIOR JUDGMENT/WARRANT NO: 030 ----------------------


COURT OF JURISDICTION..........: TEXAS, WESTERN DISTRICT
DOCKET NUMBER..................: SA-03-CR-89-EP
JUDGE..........................: PRADO
DATE SENTENCED/PROBATION IMPOSED: 07-03-2003
DATE COMMITTED.................: 10-15-2003
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
```

G0002      MORE PAGES TO FOLLOW . . .

```
  BOPOI         *         PUBLIC INFORMATION         *      08-24-2007
  PAGE 004      *            INMATE DATA             *      10:47:02
                         AS OF 08-10-2007
```

REGNO..: 94970-080 NAME: BOECK, EDGAR ALBERT

```
                    RESP OF: CSA / GOOD CONDUCT TIME RELEASE
                    PHONE..: 210-472-6225   FAX: 210-472-6224
PROBATION IMPOSED...............: NO


                 FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $100.00         $00.00         $00.00       $00.00


RESTITUTION...: PROPERTY: NO  SERVICES:  NO        AMOUNT: $00.00
```

-------------------------PRIOR OBLIGATION NO: 010 -------------------------
OFFENSE CODE....: 391
OFF/CHG: CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE IN EXCESS OF
         50 GRAMS OF METHAMPHETAMINE T21USC846

```
  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   60 MONTHS
  TERM OF SUPERVISION............:    4 YEARS
  DATE OF OFFENSE................: 02-26-2003
```

-------------------------PRIOR COMPUTATION NO: 020 -------------------------

COMPUTATION 020 WAS LAST UPDATED ON 04-18-2006 AT CSA AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 020:  020 010, 030 010

```
DATE COMPUTATION BEGAN..........: 07-03-2003
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:   60 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    5 YEARS
AGGREGATED TERM OF SUPERVISION..:    4 YEARS
EARLIEST DATE OF OFFENSE........: 02-01-1997


JAIL CREDIT.....................:  FROM DATE   THRU DATE
                                   02-26-2003  07-02-2003
```

G0002     MORE PAGES TO FOLLOW . . .

```
   BOPOI        *       PUBLIC INFORMATION        *    08-24-2007
PAGE 005        *           INMATE DATA           *    10:47:02
                        AS OF 08-10-2007

REGNO..: 94970-080 NAME: BOECK, EDGAR ALBERT

                   RESP OF: CSA / GOOD CONDUCT TIME RELEASE
                   PHONE..: 210-472-6225    FAX: 210-472-6224
TOTAL PRIOR CREDIT TIME.........: 127
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 199
TOTAL GCT EARNED................: 199
STATUTORY RELEASE DATE PROJECTED: 08-11-2007
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 02-26-2008


ACTUAL SATISFACTION DATE........: 08-10-2007
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CSA
ACTUAL SATISFACTION KEYED BY....: KAS


DAYS REMAINING..................: 199
FINAL PUBLIC LAW DAYS...........: 1
```

G0002    MORE PAGES TO FOLLOW . . .

```
BOPOI           *       PUBLIC INFORMATION        *     08-24-2007
PAGE 006        *            INMATE DATA          *     10:47:02
                           AS OF 07-11-2002
```

REGNO..: 94970-080 NAME: BOECK, EDGAR ALBERT

RESP OF: CSA / GOOD CONDUCT TIME RELEASE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.

THE INMATE WAS SCHEDULED FOR RELEASE: 07-11-2002 VIA GCT REL

----------------------PRIOR JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION..........: TEXAS, WESTERN DISTRICT
DOCKET NUMBER..................: SA-99-CR-362(06)-HG
JUDGE..........................: GARCIA
DATE SENTENCED/PROBATION IMPOSED: 08-24-2000
DATE COMMITTED.................: 10-26-2000
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO

                  FELONY ASSESS  MISDMNR ASSESS  FINES       COSTS
NON-COMMITTED.: $100.00         $00.00          $00.00      $00.00

RESTITUTION...: PROPERTY: NO  SERVICES: NO      AMOUNT: $00.00

----------------------PRIOR OBLIGATION NO: 010 ----------------------
OFFENSE CODE....: 391
OFF/CHG: 21 USC 846, 21 USC 841(A)(1): CONSPIRACY TO MANUFACTURE AND
         DISTRIBUTE METHAMPHETAMINE.

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:    24 MONTHS
 TERM OF SUPERVISION............:     3 YEARS
 DATE OF OFFENSE................: 02-01-1997
```

G0002      MORE PAGES TO FOLLOW . . .

```
  BOPOI        *         PUBLIC INFORMATION        *      08-24-2007
PAGE 007 OF 007 *             INMATE DATA          *      10:47:02
                         AS OF 07-11-2002
```

REGNO..: 94970-080 NAME: BOECK, EDGAR ALBERT


                   RESP OF: CSA / GOOD CONDUCT TIME RELEASE

                   PHONE..: 210-472-6225    FAX: 210-472-6224
---------------------------PRIOR COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 05-30-2002 AT CSA AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010


DATE COMPUTATION BEGAN.........: 09-19-2000
TOTAL TERM IN EFFECT...........:   24 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    2 YEARS
EARLIEST DATE OF OFFENSE........: 02-01-1997


JAIL CREDIT....................:   FROM DATE    THRU DATE
                                   09-08-1999   09-09-1999
                                   02-01-2000   02-08-2000


TOTAL PRIOR CREDIT TIME........: 10
TOTAL INOPERATIVE TIME.........: 0
TOTAL GCT EARNED AND PROJECTED..: 59
TOTAL GCT EARNED...............: 59
STATUTORY RELEASE DATE PROJECTED: 07-11-2002
SIX MONTH /10% DATE............: 05-06-2002
EXPIRATION FULL TERM DATE.......: 09-08-2002


ACTUAL SATISFACTION DATE........: 07-11-2002
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CSA
ACTUAL SATISFACTION KEYED BY....: EGT

```
DAYS REMAINING..................: 59
FINAL PUBLIC LAW DAYS...........: 0
```

```
S0039      ALL CURRENT COMPS ARE SATISFIED
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDGAR BOECK,                              )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )        Civil Action No. 07-1096 (JR)
                                         )
U.S. Department of Justice, et al.,      )
                                         )
            Defendants.                  )
                                         )
_____)

## DECLARATION OF BRUCE PLUMLEY

I, Bruce Plumley, hereby declare and state the following:

1. I am an administrative Remedy Specialist for the Federal Bureau of Prisons (BOP) in Washington, D.C., and have served in this capacity since August 22, 2005. I have been employed with the BOP since March 8, 1992.

2. Under 28 C.F.R. § 542.10-542.18, "Administrative Remedy Procedure for Inmates," the Bureau of Prisons has implemented a procedure that inmates must use to make complaints about any aspect of their confinement. Under this procedure, an inmate must first address his complaint informally with the institution staff. If informal resolution is unsuccessful, the inmate may file a formal complaint with the warden of the institution where he is incarcerated. If the inmate is not satisfied with the warden's response, he may appeal his concerns to the Regional Director. If dissatisfied with the Regional Director's response, the inmate may finally appeal to the Office of General Counsel in the Central Office of the Bureau of Prisons. Complaints regarding disciplinary hearings, unlike other administrative remedy requests, are initially submitted to the region rather than institution level. It should also be noted, no request for

administrative remedy is considered to have been fully exhausted until Central Office has issued a formal response to the inmate.

3. As an Administrative Remedy Specialist, I have access to the BOP database known as Sentry. All administrative remedy requests and appeals filed by Bureau of Prisons' inmates are cataloged under a permanent and unique number which is maintained in Sentry.

4. On August 17, 2007, I searched the Sentry computer system in the Central Office of the Bureau of Prisons for all the administrative remedies filed, to date, by Edgar Boeck, BOP Register No. 94970-080.

5. Sentry shows plaintiff appealed, on May 10, 2006, the April 12, 2006, Center Discipline Committee disciplinary decision for plaintiff's infraction of Use of Narcotics, Marijuana, Drugs, or Related Paraphernalia not Prescribed for the Individual by Medical Staff, a violation of Code 112, to the South Central Regional Office. The South Central Regional Director denied the appeal on August 24, 2006. On November 2, 2006, plaintiff appealed to the Office of General Counsel, which rejected the appeal as untimely because it was received 41 days beyond the 30-day time limit. Therefore, plaintiff has failed to exhaust his administrative remedies for the claims raised in this lawsuit.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 17th day of August 2007 in Washington, D.C.

Bruce Plumley
Administrative Remedy Specialist
Office of General Counsel
Federal Bureau of Prisons